**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
3:54 pm, Jan 02, 2026
**JEFFREY P. COLWELL, CLERK**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

(To be supplied by the court)

Angelo Ritter-Zwicq _____, Plaintiff

v.

**Jury Trial requested:**
(please check one)
___XX__ Yes ____ No

Jared Polis (Governor of Colorado)
_____

Moses Andre Stancil (Ex. Dir. of CDOC)
_____

Allison Talley (SOTMP Admin.)
_____

Amanda Retting (Head of SOTMP)
_____, Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

---

## PRISONER COMPLAINT

---

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

## A.   PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Angelo R.Her-Zwieg  # 192513  P.O. Box 999  Cañon City, CO 81215

(Name, prisoner identification number, and complete mailing address)

_____

(Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

____   Pretrial detainee
____   Civilly committed detainee
____   Immigration detainee
_X__   Convicted and sentenced state prisoner
____   Convicted and sentenced federal prisoner
____   Other: (*Please explain*) _____


## B.   DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:   **Jared Polis, Governor of Colorado**

(Name, job title, and complete mailing address)

**200 E. Colfax Ave., Denver, CO  80202**

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _**X**_ Yes ____ No (*check one*).  Briefly explain:

**State employee acting in the course of assigned**

**duties.**

Defendant 1 is being sued in his/her _**X**_ individual and/or **X** official capacity.

2



Defendant 2:    **Moses Andre Stancil, Executive Director of CDOC**

(Name, job title, and complete mailing address)

**1250 Academy Park Loop, Colorado Springs, CO  80910**

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? _X_ Yes ___ No (*check one*). Briefly explain:

**State employee acting in the course of assigned**

**duties.**

Defendant 2 is being sued in his/her _X_ individual and/or _X_ official capacity.

Defendant 3:    **Allison Talley, SOTMP Administrator**

(Name, job title, and complete mailing address)

**1250 Academy Park Loop, Colorado Springs, CO 80910**

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? _X_ Yes ___ No (*check one*). Briefly explain:

**State employee acting in the course of assigned**

**duties.**

Defendant 3 is being sued in his/her _X_ individual and/or _X_ official capacity.

## C.    JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

_X_    State/Local Official (42 U.S.C. § 1983)

___    Federal Official
As to the federal official, are you seeking:
___ Money damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)
___ Declaratory/Injunctive relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, or 28 U.S.C. § 2201

_X_    Other: (*please identify*) _28   U.S.C. § 1367_

3

B.    Defendant Information (Cont.)

Def. 4:  Amanda Retting, Head of SOTMP

1250 Academy Park Loop, Colo. Spgs., CO  80910

Defendant was acting under color of state law. Yes.

Defendant is a state employee in the course of
assigned duties.

Defendant is sued in both individual and official
capacities.

Def. 5:  Chris Lobanov-Rostovsky, Head of SOMB

1250 Academy Park Loop, Colo. Spgs., CO  80910

Defendant was acting under color of state law. Yes.

Defendant is a state employee in the course of
assigned duties.

Defendant is sued in both individual and official
capacities.

Def. 6:  Shane Stucker, Warden of Fremont Correctional Facility

57500 E. U.S. Hwy. 50 @ Evans Ave., Canon City,
CO  80212 — The CDOC Canon Complex

Defendant was acting under color of state law. Yes.

Defendant is a state employee in the course of
assigned duties.

Defendant is sued in both individual and official
capacities.

4

D.    STATEMENT OF CLAIMS

## INTRODUCTION

This case comes before the Court based upon the refusal of
the Colorado Department of Corrections (CDOC) to provide prescribed
mental healthcare to its prisoners. Specifically, sex offender
treatment, as administered by the Sex Offender Management Board
(SOMB) and named the Sex Offender Treatment and Monitoring Program
(SOTMP). In Colorado, persons that are charged and convicted under
the Sex Offender Lifetime Supervision Act (SOLSA), CRS Sec. 18-1.3-
1001 to 18-1.3-1012 are sentenced to indeterminate periods of years
up to and to include the entirety of their natural lives. (CRS
Sec. 18-1.3-1004(1)(a)) Under SOLSA, the indeterminately sentenced
prisoner is seen by a mental health clinician, and diagnosed.
SOTMP Sex Offender treatment is required by statute, is part of
the sentence, and is prescribed by the diagnostician.

A prisoner convicted of a sex-related offense and sentenced
to a determinate period of years is also referred for SOTMP by
the CDOC. A CDOC mental health clinician will diagnose the pri-
soner and prescribe SOTMP Sex Offender treatment.

Sex Offender treatment is administered at a limited number
of facilities. Access to SOTMP is further limited by a lack of
sufficient SOTMP providers to serve the prisoners that are re-
quired by statute, sentenced, and/or prescribed to receive sex
offender treatment. The demand for access to the SOTMP is such
that more than one thousand CDOC prisoners are going without man-
datory, prescribed sex offender treatment.

The denial of necessary mental health care that is prescribed
by a mental health professional represents a violation of the Eighth
Amendment proscription against cruel and unusual punishments. It
is deliberately indifferent to a serious mental health need, one
which inflicts an unnecessary suffering on the sex offender pati-
ents that is incongruous with contemporary standards of decency.

No reasonable person would believe it proper to allow a pati-
ent in renal failure to suffer without dialysis treatment. No

5

reasonable person would believe it proper to allow a patient with
Major Depressive Disorder (MDD), Social Anxiety Disorder (SAD),
Schizophrenia, or other mental health pathology to suffer without
proper treatment. Yet, sex offenders are left untreated for years
to suffer imprisoned in the CDOC. It is shocking to the conscience
to any who consider it that treatment would be denied to a sex
offender patient to whom treatment has been court-ordered and/or
prescribed by a mental health professional.

The denial becomes more egregious in a modern era of tele-
health, Zoom and WEBEX video conferencing, and myriad other options
that allow for psychological care where needed that sex offenders
should continue to suffer without needed treatment. The solution
is so readily apparent that the General Assembly discussed tele-
health treatment to prevent unnecessary backlog in the CDOC on
page 10 of Senate Bill 23-164. This Act has been signed by Gov-
ernor Polis as of 5 June 2023. Colorado is a Psychology Inter-
Jurisdictional Compact (PSYPACT) state. CRS Sec. 24-60-3901 et
seq. Licensed therapists could be recruited from any of the 48
U.S. PSYPACT states to treat prisoners.

It is settled law that an indeterminately sentenced sex off-
ender has a liberty interest in obtaining SOTMP treatment. As
SOTMP is inextricably intertwined with obtaining eligibility to
be paroled, any denial of access to SOTMP will extend the period
of imprisonment in the CDOC. This is a denial of the sex offender's
procedural and substantive due process rights. Senate Bill 23-164
advises that the parole board release guideline instrument must
not include the determinately sentenced prisoner's inability to
access treatment during incarceration. It is impermissible to
use SOTMP treatment as an arbitrary hurdle that cannot be met to
prevent prisoners from becoming eligible to be paroled.

SOTMP is mental health treatment; Mental health treatment is
medical treatment. The treatment is known to be most effective
when provided as near to an offense as is practicable, and to
withhold a needed treatment as prescribed is deliberately in-

6

different to a serious medical need; a willful and wanton disre-
gard for the Plaintiff's Constitutional rights.  The denial cannot
be deemed to serve any legitimate penalogical interest.

    This Civil Action seeks remedy for the denial of SOTMP treat-
ment suffered by the Plaintiff.  The remedy sought shall include
policy change in the CDOC; all sex offenders shall be given immedi-
ate access to their necessary mental health care, which is SOTMP
treatment.  Expanding the treatment to all sex offenders immediately
is the only remedy that will ensure that this Plaintiff is not de-
nied the care that has been prescribed and is needed.  This action
also seeks damages in an amount to be determined by a jury for the
injury suffered by the denial of care to date, the deliberate in-
difference to the Plaintiff's serious mental healthcare need.  The
Plaintiff also seeks declarative and injunctive relief such that
the CDOC not be permitted to deny healthcare and to permit suffering
to additional sex offenders in the future.

                    *    *    *

D.    **STATEMENT OF CLAIMS**

**FACTUAL BACKGROUND**

Plaintiff Information:

1.    The Plaintiff, _Angelo Ritter-Zwicg_____, was found

guilty of charges of _Agg. Attempted Sexual assault of a child_
(Mark one)
[ ] at trial

[X] by plea agreement

on _October 21st 2021_____ (date)

2.    The Plaintiff was sentenced to:
(Mark one)
[X] An indeterminate period of _4_ years to life.

[ ] A determinate period of ____ years.

3.    The Plaintiff is required to participate in SOTMP treatment:
(Mark all that apply)
[x] Under SOLSA, CRS Sec. 18-1.3-1004(3), sex offender
     treatment is statutorily mandated.

[X] By referral, the CDOC Mental Health staff has prescribed
     sex offender treatment.

[X] By policy, CDOC AR 700-19(IV)(B) states that "offenders
     who have a judicial determination of a sex offense and
     are classified as an S5 may be subject to recommendation
     for sex offnse specific treatment."

[ ] Other: _____

4.    This paragraph [x] does apply  [ ] does not apply to this

Plaintiff:   The Plaintiff was seen by a psychosexual evalu-
ator at the Denver Reception and Diagnostic Center (DRDC) at
the time when he entered the CDOC.  A diagnosis was made in
relation to sex-specific, along with any additional non-sex-
specific mental health needs.  SOTMP was prescribed, in addi-
tion to any non-sex-specific mental health treatment.

Evaluator name and date of evaluation: _Name:UNK Date 10-28-21_

5.    (Mark all that apply)

[x] The Plaintiff has been denied access to SOTMP while he
     has been imprisoned.

8

[ X ] The Plaintiff is on the Global Referral List (GRL)
waiting for treatment.

[  ] The Plaintiff entered SOTMP treatment on _____ (date)
and was terminated from SOTMP on _____ (date).

[  ] The Plaintiff was terminated from SOTMP without cause
and without a hearing.

[  ] The Plaintiff was terminated from SOTMP with the given
cause: _____

[  ] The Plaintiff has a 5(D), 5(I), 5(L), 5(P), or other
qualifier pursuant to AR 700-19(IV)(B) that deprives
him of access to SOTMP treatment currently.

6.   The Plaintiff was incarcerated on ~~is the is~~ 10-21-21 (date), and has been

imprisoned for 1530 days as of today's date.  His Parole

Eligibility Date is/was on October 2024 (date).

(Mark all that apply)
[  ] The Plaintiff is not yet eligible for parole, and is
being denied SOTMP treatment.

[  ] The Plaintiff is within 18 months of his PED; his in-
ability to access SOTMP treatment to date has foreclosed
options of progressing to lower security level facilities,
to be considered for Community Corrections, or to timely
complete SOTMP before he will be seen by the parole board.

[ X ] The Plaintiff is beyond his Parole Eligibility Date but
is statutorily ineligible because he has been denied
access to SOTMP treatment making it impossible to
successfully progress in treatment.

[ X ] The Plaintiff is beyond his Parole Eligibility Date and
is functionally ineligible because he has been denied
access to SOTMP treatment.  The parole board has denied
this Plaintiff consideration for parole on grounds that
he has not completed SOTMP treatment.

＊     ＊     ＊

9

**SEX OFFENDER TREATMENT AND MONITORING PROGRAM FACTS:**

   **7.** Nothing in the instant civil action is to be liberally misconstrued to
mean that this Plaintiff will refuse "miraculous" placement into SOTMP at any
time before resolution of this litigation as is commonplace among those that do
bring suit against the CDOC for denial of SOTMP.  Nor does the Plaintiff exempt
himself from any relief obtained through litigation in any similar case for which
he may be a class member.

   **8.** Denial of access to the SOTMP program has imposed an atypical and signi-
ficant hardship on the Plaintiff in relation to the ordinary incidents of prison
life by rendering him ineligible for parole.

   **9.** Denial of parole to this Plaintiff is a certain event that will occur as
anticipated if the Plaintiff is not granted relief.

   **10.** The language of CRS 16-11.7-103 is couched in the terms of mental health
treatment and counseling.

   **11.** CRS 16-11.7-102(4) defines "treatment" as "therapy, monitoring, and
supervision of any sex offender which conforms to the standards created by the
board pursuant to section 16-11.7-103."

   **12.** CRS 16-11.7-103(4)(a)(I) uses the language, "There is currently no way
to ensure that adult sex offenders with the propensity to commit sexual offenses
will not reoffend.  Because there are adult sex offenders who can learn to man-
age unhealthy patterns and learn behaviors that can lessen their risk to society
in the course of ongoing treatment, management, and monitoring, the board shall
develop a procedure for evaluating and identifying, on a case-by-case basis,
reliably lower-risk sex offenders whose risk to sexually reoffend may not be
further reduced by participation in treatment as described in paragraph (b) of
this subsection (4)."

   **13.** CRS 16-11.7-103(4)(b)(I) goes on to say, "Treatment options must be de-
termined by a current risk assessment and evaluation and may include, but need
not be limited to, group counseling, individucal counseling, family counseling,
outpatient treatment, inpatient treatment, shared living arrangements, or treat-
ment in a therapeutic community."

   **14.** Based upon the plain language of the statutes as implemented by the gene-
ral assembly, there can be no doubt to any reasonable jurist that the intention
of the general assembly is to recognize sex offenders as suffering from a

10

mental health pathology.

15 . Sex Offender evaluators are required by statute to be qualified and
credentialled as sex-offender specific treatment providers by the Department of
Regulatory Agencies (DORA), see CRS 16-11.7-106(1,)5)(b).

16 . "[T]he best time for an offender to receive treatment is as close to the
period in which he offended as possible." See Godinez v. Williams, 2022 U.S.
Dist.LEXIS 93203 #37, Judge R. Brooke Jackson quoting testimony of Thomas
Leversee as given on 24 February 2014 in a state court evidentiary hearing.

17 . Delaying treatment to a sex offender can serve no legitimate penological
interest. Lacking resources does not give rise to a legitimate penological inter-
est. (e.g., a food shortage would not legitimize denying meals to prisoners. A
penicillin shortage would not legitimize permitting prisoners to suffer an infect-
ion. Nor shall a shortage of SOTMP resources legitimize allowing prisoners to
suffer with sex-offense related mental health disorders and symptoms.)

18 . To delay SOTMP treatment while a sex offender is imprisoned serving his
sentence, awaiting him to reach the 4-years-until-his-parole-eligibility-date
(PED) mark, as contemplated by AR 700-19, is in direct controvention to the
statutory goal of reducing risk to the public.

19 . Considering arguendo, the potential for additional sex offenses is not
eliminated through imprisonment; giving the statutes the full faith as given by
the Judiciary: Other prisoners are potential victims of an untreated sex offend-
er (see Prison Rape Elimination Act (PREA)); prison staff and visitors are also
in harm's way if the sex offender is not treated. Under these considerations,
a reasonable judge could not hold that the general assembly had the intent to
delay treatment to imprisoned sex offenders when the Statute was enacted.

20 . One convicted under SOLSA must "successfully progress[] in treatment"
in order to be eligible for consideration for parole. If denied access to the
treatment he will languish in prison indefinitely, in effect until his death.

21 . The Global Referral List (see AR 700-19) is "effectively a sham," as it
has been stated in other litigation. AR 700-19 is CDOC official policy under the
direct control of these Defendants.

22 . The Defendants have knowingly, unreasonably, willfully and wantonly denied
care to prisoners in their custody, especially the Plaintiff. Institution of a
waiting list, the GRL, pursuant to AR 700-19 is open admission that sex offender

11

patients will go without care, and that the fact of the denial is known to the
Defendants. It can never be reasonable to deny needed health care. The Defend-
ants have denied care for serious mental health needs without regard to the
rights and safety of the Plaintiff.

23 . If the Defendants do not provide SOTMP treatment, necessary mental health
care to the Plaintiff, while he is imprisoned, that need will go unmet. Serious
harm will come to every sex offender patient that goes without SOTMP treatment
and mental health care. Some injuries cannot be seen with the eye — a mental
health injury is an injury in fact.

24 . Inadequate staffing that causes serious mental health care needs to go
untreated constitutes deliberate indifference to serious mental healthcare needs
of a prisoner. The backlog of patients awaiting SOTMP is directly tied to the
years-long staffing shortages. The Defendants have failed to maintain adequate
staffing levels to attend to the mental healthcare needs of sex-offender prison-
ers. CDOC has an estimated minimum of one-thousand sex offenders in its custody
receiving zero mental health care, zero SOTMP, zero attention to that serious
mental health need.

25 . Staffing is directly controlled by the named Defendants. The Defendants
participate directly and individually in the staffing decisions at CDOC.

26 . The State must provide an inmate with a healthy habilitative environment.
In denying sex offenders SOTMP treatment, the CDOC has failed in providing a
healthy habilitative environment to the sex offender, and to the other prisoners
that surround every sex offender.

27 . The passage of Senate Bill 23-164, signed into law by Governor Polis,
acknowledges that the Defendants have denied necessary healthcare to prisoners.
The Bill amends CRS 16-11.7-105(1)(C)(V-IX) to place onus on the CDOC to provide
information to the SOMB regarding the "unnecessary backlog" of prisoners that
require and await treatment.

28 . S.B. 23-164 addresses access to telehealth (Zoom, WebEX, etc.). The CDOC
has deliberately impeded SOTMP via telehealth through its customs and policy.
Meanwhile, post-COVID, telehealth for non-sex behavioral health is commonplace.

*    *    *

**MENTAL HEALTH FACTUAL BACKGROUND**

29. The statutes that surround codification of sex offenses frame the commission of these acts as a form of mental health disorder having roots in mental health pathology. In the Colorado Revised Statutes, in SOLSA, and elsewhere that sex offense commission, conviction, evaluation, and sentencing is referenced, the word "treatment" is used repeatedly. This is necessarily indicative of a mental health model.

30. Mental health is medical health. Mental health care is medical care.

31. The duty to provide prescribed mental health care is imposed upon the SOMB, the Executive Director of the Department of Corrections, the Warden of the prison where the Plaintiff is held, and all named Defendants. The Eighth Amendment guarantees prisoners care; denial of medical or mental health care is cruel and inhumane.

32. Sex offenders are diagnosed by mental health professionals. The diagnosis of each sex offender is unique to the sex offender. Each may be diagnosed with a sex-specific sex-related disorder, hypersexual disorder, a paraphillic disorder, a sexual behavioral disorder, or any other DSM-5 recognized disorder, or any combination thereof.

33. The symptoms of these disorders are as myriad and diverse as the sex offenders themselves. In the same manner that Major Depressive Disorder (MDD) has symptoms which include dysphoria and anhedonia (defined as sustained sadness/unhappiness and an inability to experience enjoyment, respectively) See [American Psychological Association, DSM-5 (2013)]; sex-related disorders have symptoms suffered by sex offenders diagnosed with these disorders.

34. Sex-related disorder sufferers may have any of the symptoms of MDD due to the prevalence of comorbidity. Additionally, they may have any of the symptoms of other comorbid disorders commonly suffered by sex offenders such as the Anxiety Disorders or Personality Disorders.

35. Sex-related disorder symptoms more unique to sex-related disorders may include but are not limited to: inappropriate sexual impulses, pederasty, hebophilia, paraphilliae, desires for non-consentual sex, frotage, dissociative identities, an uncontrollable desire to masturbate, anguish, undesired sexual thoughts (vis-à-vis: Obsessive Compulsive Disorder), shame, and grief.

36. Untreated sex-related disorders may lead to suicidal ideation and also

13

to suicidality.

**37**. Untreated sex offenders may develop psychosomatic symptoms as a result
of underlying psychological and emotional symptoms. These include but are not
limited to: stress, rashes, hives, acne, eczema, psoriasis, body aches and pains,
hypertension, heart disease, tachycardia, hormonal imbalances, arrhythmias, pal-
pitations, cancer, Crohn's Disease, Irritable Bowel Syndrome, fatigue, etc.*

**38**. Sex offenders suffer actual physical pain and distress when their serious
mental health needs go unmet; when their sex-related mental health disorders go
untreated. Psychosomatic symptoms are a form of torture if untreated.

**39**. The Plaintiff, who is a convicted sex offender and has been evaluated by
a CDOC mental health professional and found to require SOTMP treatment, and has
been duly prescribed SOTMP treatment, suffers from symptoms as described above.
His symptoms may include one, several, or all of the symptoms of sex-related
disorder or of any related comorbid DSM-5 diagnosis. His symptoms may range from
mild to severe.

**40**. The Plaintiff shall provide UNDER SEAL an affidavit outling the lurid
details of his unique set of symptoms upon the ORDER of the Judge or Magistrate
if it is deemed to be necessary and appropriate. See: Health Insurance Portability
and Accountability Act (HIPAA) privacy provisions.

---

*References:
1. Al'abadie, et al., The Relationship between Stress and the onset and exacerbation
   of psoriasis and other skin conditions. Br. J. Derm. 199:203 (1994)
2. Brown & Bettley, Psychiatric Treatment of Eczema: A Controlled Trial. British
   Medical Journal Vol. 2, No. 5764 (Jun. 26, 1971) pp. 729-734
3. Eysenck, Hans, "Personality, Stress, and Cancer: Prediction and Prophylaxis"
   British Journal of Medical Psychology. 61:57-75 (1988)
4. Eysenck, Hans, "Personality, Stress, and Disease: An Interactionist Perspective"
   Psychological Inquiry. Vol. 2, No. 3 (1991) pp. 221-232
5. Kubzansky, L.D., et al., Positive psychological well-being and cardiovascular
   health promotion. Journal of the American College of Cardiology, Vol. 72
   No. 12 (2018) pp. 1382-1396
6. Latimer & Campbell, Behavioral Medicine and the Functional Bowel Disorder,
   International Journal of Mental Health. Vol. 9, No. 1-2 (Spring/Summer
   1980) pp. 111-128.
7. Suls & Howren, Understanding the Physical-Symptom Experience: The Distinctive
   Contributions of Anxiety and Depression, Current Directions in Psychological
   Science. Vol. 21, No. 2 (April 2012) pp. 129-134
8. Walker, N., The Definition of Psychosomatic Disorder, British Journal of
   Philosophical Science, Vol. 6, No. 24 (Feb. 1956) pp. 265-299

## SOTMP; MENTAL HEALTHCARE OR PUNITIVE MEASURE?

41. Many convicted sex offenders have chosen either to accept a plea agree-
ment or to proceed to trial based upon SOTMP statutes. The advice of their
respective counsellors was based upon their understanding of the CDOC and the
SOTMP treatment circumstances they expected their clients to encounter. The
only way to ensure accurate advice is to institute a policy of immediate treat-
ment for every convicted sex offender that enters the CDOC. Any other system
injects confusion and inconsistency into SOTMP treatment, and sentencing.

42. Either sex-offender SOTMP treatment is genuine and legitimate mental
health care, or it is not. If SOTMP treatment is not legitimate mental health
care, then it is something else. If SOTMP is something else (e.g., it is an
additional punitive component to a sex offender's sentencing) it must be up to
the discretion of the sentencing judge under the auspices of sentencing guide-
lines. It may not be an arbitrary and capricious measure left to the CDOC.

43. The Defendants do not adhere to treatment that is endorsed by the
American Psychological Association, to the risk-need-responsivity (RNR) model,
or to the best practices of empirically-researched evidence-based methods for
treatment of sex offenders. In practice, the SOTMP instead comprises group
confessions, self-flagellation and shaming, and examination with polygraphs.
The emphasis is placed on admission to narratives that may or may not be based
in factual reality, in lieu of an emphasis based on healing.

44. The government has created a system that treats sex offenders differently
than all other offenders. Through the statutes of the general assembly, and the
custom and policy of the executive CDOC, mental healthcare has been inextricably
intertwined with imprisonment. Offenders of other categories of crime are not
automatically diagnosed with mental health disorders by statute, custom or policy
by dint of their convictions in the same manner as the sex offender. (e.g., a
thief is not diagnosed as having a personality disorder by statute.) The Defend-
ants may not maintain such a system while simultaneously standing idly by as it
fails to provide the very care that it demands its prisoners complete.

45. The CDOC has weaponized the treatment requirement against sex offenders
to prevent this class of prisoners from becoming eligible for consideration for
parole. The aim is to extend CDOC custody of these prisoners indefinitely, to
maximize the cost to the taxpayer, and to increase its own perceived relevance.

15

46. A CDOC prisoner that attempts suicide and survives will be moved to Centennial Correctional Facility and enter the Residental Treatment Program.

47. A CDOC prisoner with additional mental health diagnoses, for example if he suffers from schizophrenia, may be moved to San Carlos Correctional Facility or Colorado Mental Health Institute at Pueblo (CMHIP) and treated with medication, talk therapy, or both.  The diagnoses will not go untreated.

48. Prisoners with sex-related mental health care needs are treated differently from prisoners with non-sex-related mental health care needs.

49. A CDOC prisoner in SOTMP treatment or waiting for placement in SOTMP will endure under the threat of arbitrary and capricious removal from treatment or loss of pending placement at the hands of any CDOC staffer for actual or invented disciplinary offenses, even if slight.  In addition, he may be indentured into less desirable work assignments, be the target of false allegations of COPD violations and/or harassment, or in other manners overpoliced.

50. A CDOC prisoner convicted of a sex offense that does not receive treatment will not be eligible for progressive moves to minimum or minimum restricted security level facilities.  This is an impediment to re-adaptation to a community environment from the prison environment.

51. A CDOC prisoner that claims to suffer from opioid withdrawl will be placed on Medication Assisted Treatment (MAT program) and receive Suboxone without delay. The sex offender will wait many years — even decades — for treatment.

52. The legislative intent of sex offender statutes was never to imprison sex offenders for life.  The intent of the laws was to ensure that sex offenders were to receive treatment before being returned to the communities of the state, to reduce reoffending as low as is practicable, and to maintain an increased level of deterrence during parole by maintaining the threat to return a parolee that does reoffend to incarceration for life.  See: Senate Judiciary Committee 2nd Session 61st General Assembly, statements made by Senator Wells prior to passage of 1998 Colorado House Bill 1156

＊     ＊     ＊

16

## D.     STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action.  For each claim,
specify the right that allegedly has been violated and state all facts that support your claim,
including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s)
involved in each claim, and the specific facts that show how each person was involved in each
claim.  You do not need to cite specific legal cases to support your claim(s).  If additional space
is needed to describe any claim or to assert additional claims, use extra paper to continue that
claim or to assert the additional claim(s).  Please indicate that additional paper is attached and
label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:  <u>42 USC Sec. 1983—PROCEDURAL DUE PROCESS—US Const.
           Amendment XIV</u>

Claim one is asserted against these Defendant(s):  **ALL DEFENDANTS**

## I.     What did each Defendant do to Plaintiff?[*]

53.  Plaintiff incorporates by reference all other paragraphs of this
Complaint as if set forth in full here.

54.  The Plaintiff has been denied access to SOTMP Sex Offender Treatment.

55.  The Plaintiff has not been provided with any meaningful opportunity to
contest the deprivation of SOTMP treatment, meaningful review of the denial
of treatment, alternatives to categorical denial, or recourse for the denial.

56.  A person convicted under SOLSA has a clearly established liberty interest
in accessing SOTMP treatment; this Plaintiff has been denied SOTMP treatment.

57.  To be eligible for parole a convicted sex offender must successfully
progress in treatment; this Plaintiff has been denied SOTMP treatment.

58.  Plaintiff has been blocked by the Defendants from accessing telehealth
treatment, Zoom or WebEX access to outside practitioners, or any other alter-
native method of obtaining SOTMP treatment.

59.  Each Defendant has participated in maintaining a custom or policy of
denial of SOTMP sex offender treatment to CDOC prisoners, especially the
Plaintiff.  The GRL is evidence of the knowing state of mind of Defendants.

60.  The Defendants have caused the Plaintiff to suffer a grievous loss by
denying him sufficient process to resolve his deprivation of SOTMP treatment.

---

[*]Roman-Numerals I, II, III & IV  are  from Naslous v. Two Unknown B.I.C.E. Agents, 492 F.3d 1158,
1163 (10th Cir. 2007)

17

CLAIM ONE (Cont.)

II.   When did the Defendants deny Plaintiff access to SOTMP?
Beginning at the time of diagnosis to present.

III.   How did the Defendants' denial harm the Plaintiff?  The
Plaintiff was denied his liberty interest; he was denied the ability
to become eligible for consideration for parole.

IV.   What specific legal right did the Defendants deny Plaintiff?
The Plaintiff has a Fourteenth Amendment protected right to due process
of the law.

D.   STATEMENT OF CLAIMS

CLAIM TWO

42 USC Sec. 1983—SUBSTANTIVE DUE PROCESS—U.S. Const.
Amendment XIV; Asserted against ALL DEFENDANTS

I.   What did each Defendant do to Plaintiff?

61. Plaintiff incorporates by reference all other paragraphs of this Complaint
as if set forth in full here.

62. The Defendants, as functionaries of the government, have arbitrarily
deprived this Plaintiff of the opportunity to progress through his incarceration
and to become eligible for consideration for parole by denying his access to
required SOTMP Sex Offender Treatment.

63. The deprivation of the opportunity to become eligible for consideration
for parole is a violation of a clearly established liberty interest to SOLSA
convicted sex offenders seeking SOTMP treatment.

64. The Defendants have no adequate justification for their denial of care.

65. The denial of sex offender treatment shocks the conscience, it is an
arbitrary and capricious abuse of authority, and serves no legitimate peno-
logical interest or other legitimate governmental interest.

66. The use of a global referral wait list is open acknowlegment of the know-
ing state of mind of the Defendants; they know they are denying care to CDOC
prisoners in their custody.

67. The existence of the global referral wait-list for years is demonstrative
of the deliberate and knowing choice by these Defendants to maintain the
arbitrary deprivation of mental health care to prisoners for whom care is
necessary and obligatory.

18

### CLAIM TWO (Cont.)

II.   **When did the Defendants deny Plaintiff access to SOTMP?**
      Beginning at the time of diagnosis to present.

III.  **How did the Defendants' denial harm the Plaintiff?** The
      Plaintiff was denied his liberty interest; he was denied the ability
      to become eligible for consideration for parole.

IV.   **What specific legal right did the Defendants deny Plaintiff?**
      The Plaintiff has a Fourteenth Amended protected right to due process
      of the law.

D.    **STATEMENT OF CLAIMS**

      ### CLAIM THREE

      **42 USC Sec. 1983—DELIBERATE INDIFFERENCE TO SERIOUS MENTAL
      HEALTHCARE NEED—U.S. Const. Amendment VIII; Asserted against
      ALL DEFENDANTS**

I.    **What did each Defendant do to Plaintiff?**

   68. Plaintiff incorporates by reference all other paragraphs of this Complaint
as if set forth in full here.

   69. Inherent or implicit in the statutory duty of governmental entities to
provide food, shelter, and if necessary medical treatment to all individuals
arrested or in custody is the duty to pay for such expenses.

   70. Deliberate indifference in violation of the Plaintiff's Eighth Amendment
right to medical care for serious mental health needs has occurred where the Defend-
ants repeatedly fail to address the mental healthcare requirements of the Plaintiff
as prescribed.

   71. Infliction of unnecessary suffering on a prisoner by failure to treat his
serious mental health needs is inconsistent with contemporary standards of decency
and violates the Eighth Amendment.

   72. Deliberate indifference to serious mental health needs of a prisoner con-
stitutes unnecessary and wanton infliction of suffering and anguish proscribed by
the Eighth Amendment; regardless of how evidenced, deliberate indifference to pri-
soners' serious mental illness or dysfunction states cause of action under civil
rights statutes.

   73. These elementary principles establish the government's obligation to pro-
vide mental health care for those whom it is punishing by incarceration.  An in-
mate must rely on prison authorities to treat his mental health needs; authorities

that fail to do so will leave those needs unmet.

74. Mental health care has been prescribed in this case to the Plaintiff by
a mental healthcare evaluator, a treatment professional employed by the CDOC.

75. Prison officials, and all named Defendants, know that this care has been
prescribed and have denied the prescribed treatment willfully and wantonly, know-
ingly and deliberately. There is no legitimate penological or other legitimate
governmental interest in denying this care.

II.  **When did the Defendants deny Plaintiff access to SOTMP?**
     Beginning at the time of diagnosis to present.

III. **How did the Defendants' denial harm the Plaintiff?** The Plaintiff
     has suffered from the symptoms associated with his sex offense specific
     mental health dysfunction. The Plaintiff also suffers with the additional
     symptoms associated with comorbid mental health disorders, e.g. depression,
     anxiety, physical pains, etc., that is without legitimate excuse. Proper
     mental healthcare has been denied to the Plaintiff.

IV.  **What specific right did the Defendants deny Plaintiff?** The
     Plaintiff has an Eighth Amendment protected right to be free from cruel
     and unusual punishments; i.e., denial of necessary prescribed mental
     health care.

                    *       *       *

20

### E.    PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ____ Yes _X_ No (*check one*).

*If your answer is "Yes," complete this section of the form. If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit. Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s):                      _____

Docket number and court:                      _____

Claims raised:                                _____

Disposition: (is the case still pending?
has it been dismissed?; was relief granted?)  _____

Reasons for dismissal, if dismissed:          _____

Result on appeal, if appealed:                _____


### F.    ADMINISTRATIVE REMEDIES

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

    _X_ Yes ___ No (*check one*)

Did you exhaust administrative remedies?

    _X_ Yes ___ No (*check one*)

21

F.    ADMINISTRATIVE REMEDIES (Cont.)

The CDOC Grievance Process is a dead-end.  To grieve is futile.
Those prisoners that do grieve the inability to access SOTMP treat-
ment are met with boilerplate canned responses that read as follows:

A review of your [letter, grievance, etc.] and the concern you pre-
sented was completed.  [Mr. ____], if the Sex Offender Treatment &
Monitoring Program (SOTMP) understands your request, you feel like you
should be placed immediately into treatment. First [Mr. ____], congrat-
ulations on taking the steps necessary to participate in SOTMP Treatment!
A review of your records indicates you are currently on the Colorado Dept.
of Corr. (CDOC) Global Referral Wait-List for SOTMP Treatment and are now
waiting for your opportunity to participate.
(1.) Mr. ____, in looking at your treatment placement concern, please
note that DOC AR 700-19 outlines the prioritization for clients for SOTMP
treatment placement.  This regulation notes: "Offenders with judicial
determination of a sex crime that are within four years of their parole
eligibility date are prioritized for sex offense specific treatment based
upon, but not limited to, the following: a) P.E.D. b) Risk for sexual re-
cidivism c) prior SOTMP treatment opportunities d) institutional behavior
Mr. ____, due to the lifetime supervision act the SOTMP prioritizes
those who have a liberty interest over those who have a mandatory release
date.  You are on the list for treatment and if your placement on the GRL
comes up before your MRD, you will be placed in treatment.
Your current status appears correct as you are on the DOC Global Refer-
ral Wait-List for SOTMP Treatment and will be placed into treatment based
upon DOC AR 700-19 prioritization.
Nevertheless, the DOC and SOTMP would like to encourage you to partici-
pate in any DOC treatment, including your future opportunity at SOTMP treat-
ment.  The DOC is dedicated to providing opportunities for a client's pote-
ntial success.  Research of the SOTMP and other treatment programs have
shown to have an impact on recidivism.  As such, Mr. ____, the SOTMP hopes
that this information will aide (sic) you in knowing that clients who are
motivated and participate in the SOTMP and other treatment programs tend
to be more successful when released.  The SOTMP hopes that you take advan-
tage of this or any other DOC treatment opportunity.  -Jaime Bailey, FCF

For decades prisoners have grieved the CDOC denial-of-access to
SOTMP matter, to include Mr. Beebe, Mr. Tillery, Mr. Lerner & Aigner,
Mr. Wismer; and class representatives of D. Colo. 24-cv-1853; scores
of active SOTMP access cases in active litigation now; and hundreds
of prisoners too numerous to list.  All categorically denied.

[ X ] This Plaintiff has exhausted the administrative remedies; his
grievances are attached.

[  ] This Plaintiff has exhausted the administrative remedies; the
futility exception applies.
"The futility exception generally applies when administrative relief is effectively foreclosed.
This may occur in two situations: (1) for another inmates same grievance there has been an
adverse decision disposing of the precise issue raised by the petitioner, or (2) other inmates'
same grievances have been met with a policy of categorical denial." King v. Ciolli, 2023 U.S.
Dist.LEXIS 65179 *7 (internal quotes and citations omitted) also, Ross v. Blake, 578 U.S. 632,
643 (2016)

## G.    REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do. If additional space is needed
to identify the relief you are requesting, use extra paper to request relief. Please indicate that
additional paper is attached and label the additional pages regarding relief as "G. REQUEST
FOR RELIEF."*

76. That process issue to the Defendants that they be required
    to answer in the time allowed by law.
77. A trial by jury on all issues triable by jury.
78. Plaintiff's costs in bringing this action and other reason-
    able costs, e.g. attorney fees if incurred, etc.
79. Declarative relief, the Court shall declare the Plaintiff
    has a liberty interest and/or Constitutional right to the
    immediate access to SOTMP treatment.
80. Injunctive relief, the Court shall enjoin the Defendants
    from denial of mental health care that is prescribed by a
    mental health professional; i.e. SOTMP treatment.
81. Plaintiff be awarded actual damages in an amount to be
    determined by a jury.
82. Plaintiff be awarded exemplary damages in an amount to be
    determined by a jury.
83. Any and all further relief to which the Plaintiff may be
    entitled that the Court may deem to be just.

## H.    PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this
complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746;
18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my
knowledge, information, and belief that this complaint: (1) is not being presented for an improper
purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) is supported by existing law or by a nonfrivolous argument for extending or modifying
existing law; (3) the factual contentions have evidentiary support or, if specifically so identified,
will likely have evidentiary support after a reasonable opportunity for further investigation or
discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's signature)

12-29-25
_____
(Date)

The foregoing Complaint was compiled and prepared
at the Plaintiff's specific direction with the
assistance of lay-person Eric St. George pursuant
to Johnson v. Avery, 393 US 483 (1969), and
Bounds v. Smith, 430 US 817 (1977)

(Revised November 2022)

D.       STATEMENT OF CLAIMS

         CLAIM FOUR

         BReach of Contract—Colorado Statute and Universal Commercial
         Code violation; Asserted Against ALL DEFENDANTS

I.       What did each Defendant do to Plaintiff?

84.    Plaintiff incorporates by reference all other paragraphs of this Complaint
as if set forth in full here.

85.    The Plaintiff entered into a plea agreement with the State of Colorado;
the terms of the agreement were that he agreed to waive his right to a trial by
jury in exchange for favorable sentencing in criminal case: _____

86.    The Plaintiff accepted the terms of his plea agreement in the criminal
case [named immediately above] under the auspices of receiving SOTMP upon his
arrival in CDOC.

87.    The State of Colorado guaranteed and promised to provide the Plaintiff
with timely and coextensive with incarceration offense-specific treatment necessary
to become eligible for parole.

88.    The Plaintiff has performed his end of the plea agreement. He is a
state prisoner held in the CDOC serving the agreed-upon sentence.

89.    A plea agreement is a binding contract between the Plaintiff and the
State. It is enforceable under contract law standards.

90.    The Plaintiff will not receive SOTMP treatment before he reaches his
Parole Eligibility Date (PED).

91.    The Plaintiff has been denied required SOTMP treatment. He is prejudiced
by the inability to complete SOTMP which is required in order to become eligible to
be paroled.

92.    On _December 2021_ (date), the Plaintiff was advised by _SOTMP_
_Admin_ of the following: _Admitted to the GRL but not in SOTMP yet_.
This is violative of best practices as is statutorily mandated. The Plaintiff is
being subjected to treatment that is greater than that which is reflected in his
assessed needs based upon his Level of Service Inventory--Revised (LSI-R) and
STATIC-99 scores. The Plaintiff entered the plea agreement contract under the
assurances he would receive SOTMP treatment as mandated by best practices, meeting
his risk, need, and responsivity category under the Risk-Need-Responsivity (RNR)
model explicitly mandated in statute.

24

II.      When did the Defendants deny Plaintiff access to SOTMP?
         Beginning at the time of the plea agreement contract to present.

III.     How did the Defendants' denial harm the Plaintiff?
         Plaintiff signed a contract with the State in good faith; the breach
         of contract denies him the ability to become eligible for parole consideration.

IV.      What specific legal right did the Defendants deny Plaintiff?
         The Plaintiff has a right to enforce specific performance under the contract
         -- here the plea agreement -- which is the state's obligation to provide
         him SOTMP treatment.  The Plaintiff has maintained his agreed-upon terms
         of the contract; the Defendants are in breach of contract.

25

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

_Angelo Ritter-Zwieg_                ,Plaintiff

v.

Jared Polis (Governor of Colorado), et al.,
                              Defendants.

---

**MOTION FOR COURT ORDER TO DIRECT THE US MARSHALL TO SERVE SUMMONS
UPON DEFENDANT POLIS AND/OR COUNSEL FOR DEFENDANT POLIS**

---

The Plaintiff, _Angelo Ritter-Zwieg_    , pro-se, herewith respectfully
moves this Court to Order the Service of Summons upon the Defendant,
Jared Polis, Governor of Colorado, by the US Marshall, or in the
alternative to order substitute service, or other relief the Court
may deem to be just.  In support, he states as follows:

1.   The Plaintiff is a prisoner held by the State of Colorado in
the Colorado Department of Corrections.  He has limited resources
and zero liberty.

2.   The Plaintiff is in receipt of _No document_    dated _TBD_  .
This document gives notice that the US Marshall was unable to person-
ally serve the Governor of the State.

3.   F.R.Civ.P. 4(e) permits service of summons by leaving a copy
with the Governor's secretary, administrative assistant, or managing
agent, or by delivering it to a person authorized by law to receive
service of summons. [e.g. Atty. Gen. Phil Weiser]

4.   The US Marshall may serve the summons at 1300 Broadway, 10th Fl.
in Denver; the office of the Attorney General, counsel to Defendant
Polis.  Or, at the Capitol, located at 200 W. Colfax Ave., in Denver,
in Defendant Polis' office, upon his secretary.

5.   This Court may order substitute service if Governor Polis is
not able to be located for personal service.

Respectfully submitted this _29_ day of _December_ , 2025.

Signature: _Cwz_
Printed Name: _Angelo Ritter-Zwieg_

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. __2_-cv-___-____
                    (write case number here)

_Angelo Ritter-Zwieg_____      Plaintiff ,
(write your name here)
v.

Jared Polis (Governor of Colorado), et al.,
                         Defendants.
_____

MOTION TO VOLUNTARILY DISMISS THE PLAINTIFF'S CLAIM THREE
FOR DAMAGES AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES

The Plaintiff, _Angelo Ritter-Zwieg_ your name, pro-se herewith moves this Court
to grant voluntary dismissal of his claim for damages against the
Defendants in their official capacities for Deliberate Indifference
to Serious Mental Healthcare Need [CLAIM THREE]. A claim against a
state employee in his official capacity is a claim against the State
itself. Such claim is barred by Eleventh Amendment Immunity, unless
such immunity is waived by the State.[1]
            (check one box below)
[   ]   The Defendant is in receipt of Court Order or Motion to Dismiss:

_____
        (name of Motion or Order) (date of Motion or Order)
[ X ]   The Defendant is in receipt of no Order or Motion re: Claim 3.

Because his CLAIM THREE for damages against the Defendants in their
official capacities is barred by Eleventh Amendment immunity, the
Plaintiff moves to dismiss this claim only. He maintains his claim
for damages against the Defendants in their individual capacities,
and every other claim made in the Prisoner Complaint.

    CERTIFICATE OF SERVICE
I attest that a true copy of the foregoing
is mailed First Class with postage affixed
addressed 1300 Broadway 10th Fl., 80203 on
the date below:

                                    Respectfully Submitted,

                                    _Ax~_     12-29-25   sign and
                                                         date here.

[1] Absent waiver by the state or valid congressional override, the Eleventh Amendment bars a damages
claim against a State in federal Court. Kentucky v. Graham, 473 US 159, 169 (1985); state officials
sued in their official capacities for monetary damages are not 'persons' subject to suit under §1983.
Will v. Mich. Dept of State Police, 491 US 58, 71 (1989)

COLORADO DEPARTMENT OF CORRECTIONS
LEGAL ACCESS PROGRAM
## REQUEST FOR PRISONER ELECTRONIC SCANNING (PEF) | COVER PAGE

**INCOMPLETE FORMS WILL BE DENIED.**                TODAY'S DATE: 1-2-26

LAST NAME: Ritter-Zwieg    FIRST INITIAL: A    DOC#: 192513

FACILITY: FCF    HOUSING UNIT: 7    TIER: 25    CELL: 04

## STATE THE TYPE OF DOCUMENT BEING SENT:

☒ **42 USC §1983 INITIAL COMPLAINT** (FORM=6 PGS.) TOTAL PGS. BEING SENT: 27

☐ **28 USC §1915 INFORMA PAUPERIS 1983 COMPLAINT** (FORM=4 PGS) TOTAL PGS. BEING SENT: _____

☐ **28 USC §2241 APPLICATION FOR A WRIT OF HABEAS CORPUS** (FORM=4PGS) TOTAL PGS. BEING SENT: _____

☐ **28 USC §2254 APPLICATION FOR A WRIT OF HABEAS CORPUS** (FORM=6PGS) TOTAL PGS. BEING SENT: _____

☐ **28 USC §2255 APPLICATION FOR A WRIT OF HABEAS CORPUS** (FORM=5 PGS) TOTAL PGS. BEING SENT: _____

☐ **28 USC §1915 INFORMA PAUPERIS FOR HABEAS** (FORM=2PGS) TOTAL PGS. BEING SENT: _____

☐ Other, please list document(s) here with page number for each document:
_____
_____
_____

***OFFENDER MUST PROVIDE COURT ORDER TO CURE DEFICIENCIES TO LEGAL ASSISTANT**
☐ CHECK HERE IF THIS IS AN AMENDED COMPLAINT _____
☐ CHECK HERE IF THIS IS IN RESPONSE TO CURE DEFICIENCY _____

OFFENDER SIGNATURE _Ausenn_
*(Sign on this line)*

## DO NOT WRITE BELOW THIS LINE
Date Request Received: JAN 0 2 2020  Facility Law Library _FCF_  Legal Assistant's Initials _CAA_
TOTAL PAGES WITH THIS FAX, INCLUDING THIS COVER PAGE ___28 pgs___

Your request has been **DENIED:** _____ in whole _____ in part for the following reason(s):
____Your request form was not properly completed (Missing required signature, last name, first initial, full cell location, facility, unit, tier, cell, DOC #, date, etc.)
____The material you have submitted does not meet program definitions of legal material, as described in AR 750-01.
____Your PEF request exceeds the page limit established by the Legal Access Program (see attached). Also see posted PEF policies.
____You have not submitted the documents to be scanned.
____The Legal Access Program will not allow scanning/transmission of ARs, IAs, OMs, case law, statutes, court rules, session laws, or material contained in the law library, even as attachments/exhibits.(Exception for non-published case law to be attached to a pleading.)
____The Legal Access Program will not allow scanning/transmission of transcripts, electronic or paper media, including but not limited to transcripts, court records, and discovery from courts or attorneys, incomplete documents, altered documents, and/or blank forms.
____The Legal Access Program will not allow scanning/transmission of non-original documents, previously-copied/scanned documents, incoming correspondence, or documents (account statements, mittimus, etc.), grievances, COPD appeals; except as exhibits attached to an original pleading being filed with the court. Your pleading must include a statement referring to the attached exhibits in order for them to be scanned/transmitted.
____The Legal Access Program will not allow scanning/transmission of documents which have any substance on them (such as dirt, food, coffee, hair, bodily secretions, glue, tape, toothpaste, etc.
____Documents containing UCC/Sovereign citizen statements or signatures will not be allowed to be scanned/transmitted.
____You may bring your request into compliance and resubmit.
Other _Efiled_ JAN 0 2 2020 @ _____ _CAA_

METER END: _____ MINUS (-) METER BEGIN: _____ EQUALS (=) TOTAL ADMIN COPIES: _____ 1